OPINION OF THE COURT
Howard H. Heckman Jr., J.
It is ordered that this motion by plaintiff The Bank of New York Mellon, seeking an order: (1) granting summary judgment striking the answer of the defendants Ann Marie Davis and The Ann Marie Davis Revocable Living Trust by Ann Marie Davis as trustee; (2) discontinuing the action against defendants designated as “John Does” and “Jane Does”; (3) deeming all appearing and non-appearing defendants in default; (4) amending the caption; and (5) appointing a referee to compute the sums due and owing to the plaintiff in this mortgage foreclosure action is granted; and it is further ordered that the cross motion by defendants Ann Marie Davis and The Ann Marie Davis Revocable Living Trust by Ann Marie Davis as trustee seeking an order pursuant to CPLR 3211 (a) (3) and 3212 denying plaintiffs motion and dismissing the complaint or, in the alternative staying plaintiff’s motion pending completion of discovery, is denied; and it is further ordered that plaintiff is directed to serve a copy of this order with notice of entry upon all parties who have appeared and not waived further notice pursuant to CPLR 2103 (b) (1), (2) or (3) within 30 days of the *898 date of this order and to promptly file the affidavits of service with the clerk of the court.
Plaintiff’s action seeks to foreclose a mortgage in the sum of $420,750 executed by the defendant Ann Marie Davis on December 8, 2006 in favor of Vertical Lend, Inc. On that same date the defendant executed a promissory note promising to repay the entire amount of the indebtedness to the mortgage lender. By assignment dated April 1, 2013, Mortgage Electronic Registration Systems, Inc. as nominee for Vertical Lend, Inc. assigned the mortgage to plaintiff The Bank of New York Mellon. By deed dated January 12, 2007 defendant Ann Marie Davis conveyed title to the premises to defendant The Ann Marie Davis Revocable Living Trust. Plaintiff claims that the defendant has defaulted in making timely monthly mortgage payments since November 1, 2012. Plaintiff’s motion seeks an order granting summary judgment striking defendants’ answer and for the appointment of a referee.
In opposition and in support of the cross motion, the defendants submit two attorney affirmations and claim that the plaintiff’s motion must be denied since the proof submitted by the plaintiff in the form of an affidavit from an employee of the current mortgage service provider fails to provide sufficient admissible evidence to support its claim that it is entitled to a foreclosure judgment. Defendants claim that the current servicing agent’s affidavit is not based upon personal knowledge of the facts which would establish: (1) plaintiff’s standing to prosecute this action; (2) defendant’s default in making timely mortgage payments; and (3) plaintiff’s compliance with mortgage and statutory requirements with respect to service of notices of default since the agent relies upon records maintained by a prior mortgage servicer. Defendants argue that the proof submitted by the plaintiff, in an attempt to establish the bank’s possession of the original promissory note, constitutes hearsay and therefore the mortgagee’s summary judgment motion must be denied. Defendants also contend that the evidence submitted fails to prove The Bank of New York Mellon was the owner or lawful holder of the promissory note prior to commencing this action and therefore the action must be dismissed. Defendants argue that, in the alternative, plaintiff’s motion must be stayed pending additional discovery including a deposition of the mortgage servicing employee who, defendants claim, may not be competent to provide admissible evidence in support of the mortgage lender’s application.
*899 In opposition and in reply, the plaintiff claims that the mortgage service provider’s agent’s affidavit is based upon personal knowledge gained as a result of reviewing the business records maintained by the mortgage lenders and that under the business records exception the foreclosure specialist’s affidavit provides sufficient relevant, admissible proof to show that the plaintiff has standing to maintain this action through possession of the duly indorsed promissory note on January 17, 2013 which was prior to commencement of this action on March 20, 2015. Plaintiff also claims that the mortgage servicer’s affidavit provides sufficient proof to show that the 90-day default notice required pursuant to RPAPL 1304 and the default notice required by the mortgage itself were properly served in accordance with legal requirements. Plaintiff argues that the defendants’ remaining arguments in opposition to the motion and in support of their remaining affirmative defenses and counterclaims are not supported by relevant, admissible evidence in the record and are therefore meritless.
Although the defendants have denominated their cross motion as a motion to dismiss pursuant to CPLR 3211 (a), the service of an answer renders the motion as untimely (CPLR 3211 [e]) and therefore defendants’ application is considered as one for summary judgment. The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material question of fact from the case. The grant of summary judgment is appropriate only when it is clear that no material and triable issues of fact have been presented (Sill-man v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957]). The moving party bears the initial burden of proving entitlement to summary judgment (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985]). Once such proof has been proffered, the burden shifts to the opposing party who, to defeat the motion, must offer evidence in admissible form, and must set forth facts sufficient to require a trial of any issue of fact (CPLR 3212 [b]; Zuckerman v City of New York, 49 NY2d 557 [1980]). Summary judgment shall only be granted when there are no issues of material fact and the evidence requires the court to direct a judgment in favor of the movant as a matter of law (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065 [1979]).
Entitlement to summary judgment in favor of the foreclosing plaintiff is established, prima facie, by the plaintiff’s produc *900 tion of the mortgage and the unpaid note, and evidence of default in payment (see Wells Fargo Bank, N.A. v Erobobo, 127 AD3d 1176 [2d Dept 2015]; Wells Fargo Bank, N.A. v Ali, 122 AD3d 726 [2d Dept 2014]). Where the plaintiff’s standing is placed in issue by the defendants’ answer, the plaintiff must also establish its standing as part of its prima facie showing (Aurora Loan Servs., LLC v Taylor, 25 NY3d 355 [2015]; Loancare v Firshing, 130 AD3d 787 [2d Dept 2015]; HSBC Bank USA, N.A. v Baptiste, 128 AD3d 773 [2d Dept 2015]). In a foreclosure action a plaintiff has standing if it is either the holder of, or the assignee of, the underlying note at the time that the action is commenced (Aurora Loan Servs., LLC v Taylor; Emigrant Bank v Larizza, 129 AD3d 904 [2d Dept 2015]). Either a written assignment of the note or the physical transfer of the note to the plaintiff prior to the commencement of the action is sufficient to transfer the obligation and to provide standing (Wells Fargo Bank, N.A. v Parker, 125 AD3d 848 [2d Dept 2015]; U.S. Bank N.A. v Guy, 125 AD3d 845 [2d Dept 2015]).
Proper service of an RPAPL 1304 notice on a borrower(s) is a condition precedent to the commencement of a foreclosure action and the plaintiff has the burden of establishing compliance with this condition (Aurora Loan Servs., LLC v Weisblum, 85 AD3d 95 [2d Dept 2011]; First Natl. Bank of Chicago v Silver, 73 AD3d 162 [2d Dept 2010]). RPAPL 1304 (2) provides that notice be sent by registered or certified mail and by first-class mail to the last known address of the borrower(s), and to the residence that is the subject of the mortgage. The notice is considered given as of the date it is mailed and must be sent in a separate envelope from any other mailing or notice and the notice must be in 14-point type.
The plaintiff’s evidentiary proof in support of its summary judgment motion consists primarily of the submission of an affidavit from the mortgage service provider and attorney-in-fact identified as New Penn Financial LLC, doing business as Shell-point Mortgage Servicing (Shellpoint) for the mortgage as-signee, The Bank of New York Mellon. The mortgage service provider’s foreclosure litigation specialist’s affidavit states that the information provided is taken from the assignee/mortgage servicer’s business records which includes records acquired from the prior servicer of the mortgage loan. The affidavit sets forth the details confirming the borrower’s default, the plaintiff’s possession of the duly indorsed promissory note prior *901 to commencement of this action, and the details surrounding the mortgage lender’s service of the 30-day mortgage default notice, and service and filing of the 90-day default notice in compliance with mortgage requirements and pursuant to RPAPL 1304 and 1306.
Paragraphs 1, 2, 6, 8, 9, 12, 13 and 14 of the foreclosure specialist’s affidavit provides in pertinent part:
“1. I am the Foreclosure Litigation Specialist of New Penn Financial LLC d/b/a Shellpoint Mortgage Servicing, servicer to plaintiff herein, and as such, am fully familiar with the facts and circumstances hereinafter set forth based upon a review and examination of the records maintained by Plaintiff in the regular course of business. It is Plaintiff’s regular course of business to make and maintain such records.
“2. These records were made at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter, by a person with knowledge, and are made in the course of business activity conducted regularly by the Plaintiff. To the extent that the business records were created by prior holders and/or servicers of said loan, those records have been integrated into New Penn Financial LLC d/b/a Shellpoint Mortgage Servicing’s business records and are kept and relied upon as a regular business practice and in the ordinary course of business conducted by New Penn Financial LLC d/b/a Shellpoint Mortgage Servicing. . . .
“6. The note provided for repayment in monthly installments commencing February 1, 2007 and continuing thereafter on the same date of each subsequent month until the note was paid, along with pro-rated monthly escrow payments as more fully provided therein. Final payment, if not sooner, was due on January 1, 2037. . . .
“8. Defendant Ann Marie Davis breached said obligation when she failed to tender the installment which became due and payable on November 1, 2012 and she failed to tender subsequent installments. That the time prescribed to cure the default has expired. By reason of the aforesaid default, plaintiff elected to accelerate the mortgage debt and declared all sums secured thereby due and payable.
*902 “9. A demand for payment of the mortgage arrears was made by correspondence dated November 25, 2013. The notice demanded payment by February 23, 2014 or the next business day if said date was a Saturday, Sunday or Federal Holiday, which was at least 30 days after the date in which the notice was mailed to the Borrower by first class mail at the Borrower’s last known address. . . .
“12. Based upon my personal knowledge of New Penn Financial LLC d/b/a Shellpoint Mortgage Servicing records and business practices, a ninety (90) day pre-foreclosure notice (‘90 Day Notice’) was sent to Ann Marie Davis on March 21, 2014, to the address of the property at 27 Sunshine Lane, Amity-ville, NY 11701 by registered or certified and first class mail, in compliance with New Penn Financial LLC d/b/a Shellpoint Mortgage Servicing’s regular servicing practice. The certified mailing bore United States Postal Service Tracking Numbers 7196 9007 0420 2670 4068 and 7196 9007 0420 2670 4075, respectively. Within 3 business days of mailing the 90 day pre-foreclosure notice the filing requirements with the superintendent of banks was complied with [sic], and confirmation number NYS3516808 was issued.
“13. The content and format of said 90 Day Notice of Intent to Foreclose complied fully with the requirements of RPAPL 1304 in that the text was in a font of at least 14 point type and the notice was accompanied with a list of at least five United States Department of Housing and Urban Development approved housing counseling agencies, or other housing counseling agencies as designated by the division of housing and community renewal that serve a region where the borrower resides.
“14. The original endorsed note was delivered to Plaintiff, THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007 1T1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007 1T1 on January 17, 2013 and THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CER-TIFICATEHOLDERS OF CWALT, INC., ALTER *903 NATIVE LOAN TRUST 2007-1T1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-1T1 has maintained possession of the original endorsed note since that date. Therefore, when this action was commenced on March 20, 2015, Plaintiff was the holder of the note and was the proper party to commence, and maintain, this action.”
The plaintiff also submits documentary evidence in the form of copies of the indorsed promissory note and mortgage, together with copies of the 30-day and 90-day default notices sent to the mortgagor and copies of United States Postal Tracking statements containing tracking numbers of the 90-day notices confirming delivery and a copy of the RPAPL 1306 New York State Department of Financial Services proof of filing statement confirming mailing of the 90-day notice to Ann Marie Davis at the mortgaged premises.
Based upon the submission of copies of the duly indorsed promissory note, the mortgage and mortgage assignment, and of the default notices and United States Postal Service (USPS) tracking statements and RPAPL 1306 filing statement confirming service of the 90-day notice, taken together with the affidavit from the mortgage servicer’s employee, establishing the factual grounds for the defendant’s default, plaintiff’s standing and plaintiff’s compliance with statutory and mortgage requirements as conditions precedent to commencing this action, sufficient proof exists to make out a prima facie case in support of the plaintiff’s summary judgment motion provided the mortgage servicer’s affidavit provides admissible evidence which would entitle the mortgage lender to foreclose the mortgage. The question presented is whether the plaintiff has submitted sufficient relevant, admissible evidence to prove its entitlement to summary judgment. The two main issues to be determined are: (1) whether sufficient admissible evidence has been submitted to establish the defendant’s default in making payments and plaintiff’s standing to maintain this action, and (2) whether sufficient admissible evidence has been submitted to establish plaintiff’s compliance with statutory and mortgage conditions precedent requirements in the form of service of the mortgage default notice and the 90-day notice requirements (RPAPL 1304).
CPLR 4518 provides:
“Business records.
“(a) Generally. Any writing or record, whether in *904 the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of that act, transaction, occurrence or event, if the judge finds that it was made in the regular course of any business and that it was the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter.”
The Court of Appeals in People v Guidice (83 NY2d 630, 635 [1994]) explained that
“[t]he essence of the business records exception to the hearsay rule is that records systematically made for the conduct of a business . . . are inherently highly trustworthy because they are routine reflections of day-to-day operations and because the entrant’s obligation is to have them truthful and accurate for purposes of the conduct of the enterprise” (quoting People v Kennedy, 68 NY2d 569, 579 [1986] [internal quotation marks omitted]).
It is a unique hearsay exception since it represents hearsay deliberately created and it differs from all other hearsay exceptions which assume that declarations which come within them were not made deliberately with litigation in mind. Since a business record keeping system may be designed to meet the hearsay exception, it is important to provide predictability in this area and discretion should not normally be exercised to exclude such evidence on grounds not foreseeable at the time the record was made (see Trotti v Estate of Buchanan, 272 AD2d 660 [3d Dept 2000]).
The three foundational requirements of CPLR 4518 (a) are: (1) the record must be made in the regular course of business— reflecting a routine, regularly conducted business activity, needed and relied upon in the performance of business functions; (2) it must be the regular course of business to make the records (i.e., the record is made in accordance with established procedures for the routine, systematic making of the record); and (3) the record must have been made at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter, assuring that the recollection is fairly accurate and the entries routinely made (People v Kennedy at 579-580). It is important to distinguish that the “mere filing of papers received from other entities, even if [such papers] are retained *905 in the regular course of business, is insufficient to qualify the documents as business records” (People v Cratsley, 86 NY2d 81, 90 [1995]). The records will be admissible “if the recipient can establish personal knowledge of the maker’s business practices and procedures, or that the records provided by the maker were incorporated into the recipient’s own records or routinely relied upon by the recipient in its business” (State of New York v 158th St. & Riverside Dr. Hous. Co., Inc., 100 AD3d 1293, 1296 [2012], lv denied 20 NY3d 858 [2013]; see also Viviane Etienne Med. Care, P.C. v Country-Wide Ins. Co., 25 NY3d 498 [2015]; Deutsche Bank Natl. Trust Co. v Monica, 131 AD3d 737 [3d Dept 2015]; People v DiSalvo, 284 AD2d 547 [2d Dept 2001]; Matter of Carothers v GEICO Indent. Co., 79 AD3d 864 [2d Dept 2010]). In this regard with respect to mortgage foreclosures, a loan servicer’s employee may testify on behalf of the mortgagee and a representative of an assignee of the original lender can rely upon business records of the original lender to establish its claims for recovery of amounts due from the borrowers provided that the assignee/plaintiff establishes that it relied upon those records in the regular course of business (Landmark Capital Invs., Inc. v Li-Shan Wang, 94 AD3d 418 [1st Dept 2012]; Portfolio Recovery Assoc., LLC v Lall, 127 AD3d 576 [1st Dept 2015]; Merrill Lynch Bus. Fin. Servs. Inc. v Trataros Constr, Inc., 30 AD3d 336 [1st Dept 2006]). More recently, decisions from the Supreme Court Appellate Division, Second Department have emphasized in certain instances that admissibility requires that the loan servicer’s employee allege that he/she was personally familiar with the plaintiff’s record keeping practices and procedures (Aurora Loan Servs., LLC v Baritz, 144 AD3d 618 [2d Dept 2016]; HSBC Mtge. Servs., Inc. v Royal, 142 AD3d 958 [2d Dept 2016]; Deutsche Bank Natl. Trust Co. v Brewton, 142 AD3d 683 [2d Dept 2016]; U.S. Bank N.A. v Handler, 140 AD3d 948 [2d Dept 2016]; Aurora Loan Servs., LLC v Mercius, 138 AD3d 650 [2d Dept 2016]; Citibank, N.A. v Cabrera, 130 AD3d 861 [2d Dept 2015]).
First, with respect to the issues of proof of defendant’s default and plaintiff’s standing, the thrust of defendants’ opposition centers on the admissibility of the evidence contained in the current mortgage servicer’s representative’s affidavit and whether plaintiff’s proof satisfies the business records exception to the hearsay rule. Plaintiff’s summary judgment application relies upon the service representative’s affidavit to establish defendant’s default in making payments due under the *906 terms of the mortgage and to prove plaintiff’s standing to maintain this action. The mortgage servicer’s representative whose affidavit is submitted is employed by Shellpoint Mortgage Servicing. Based upon the documentary evidence submitted Shellpoint replaced Resurgent Mortgage Servicing as the service provider for the underlying mortgage loan sometime between November 25, 2013 and March 21, 2014. Shellpoint’s representative’s affidavit states that Resurgent’s records were incorporated into Shellpoint’s records and were relied upon by Shellpoint while conducting its business activity. The Shellpoint affidavit therefore is not based upon the current mortgage service representative’s personal knowledge of its predecessor servicer’s (Resurgent’s) business practices and procedures, but rather is based upon incorporation and reliance upon the predecessor’s business records with regard to the defendant’s default in payment and to plaintiff’s continuous possession of the duly indorsed promissory note prior to commencing this action.
Of utmost importance in deciding admissibility is whether the hearsay contained in the business documents is essentially reliable given the rationale for the business records exception which is that records systematically made for the conduct of business as a business inherently represent a high degree of trustworthiness because they are routine reflections of day-today operations that are kept regularly, systematically, contemporaneously and accurately (People v Kennedy, 68 NY2d 569, 579-580, citing 5 Wigmore, Evidence §§ 1421, 1422, 1546 [Chadbourn rev 1974]; McCormick, Evidence § 306 [3d ed]; see also Williams v Alexander, 309 NY 283 [1955]). While a series of recent decisions by the Appellate Division, Second Department have emphasized a need for the current servicer’s representative/testator to have “personal knowledge” of a prior ser-vicer’s business record keeping practices and procedures (Aurora Loan Servs., LLC v Baritz; HSBC Mtge. Servs., Inc. v Royal; Deutsche Bank Natl. Trust Co. v Brewton; U.S. Bank N.A. v Handler), CPLR 4518 (a) does not require a person to have personal knowledge of each and every entry contained in the business record, particularly in this instance, where there is a business relationship between the mortgage servicing entities entering and maintaining the records, and where the current servicer has incorporated and relied upon the records in its regular course of business (see Citibank, NA v Abrams, 144 AD3d 1212 [3d Dept 2016]; HSBC Bank USA, N.A. v Sage, 112 *907 AD3d 1126 [3d Dept 2013]; Landmark Capital Invs., Inc. v Li-Shan Wang). In this regard, the Appellate Division, Second Department most recently in Citigroup v Kopelowitz (147 AD3d 1014, 1015 [2d Dept 2017]) held:
“There is no requirement that a plaintiff in a foreclosure action rely on [a] particular set of business records to establish a prima facie case, so long as the plaintiff satisfies the admissibility requirements of CPLR 4518 (a), and the records themselves actually evince the facts for which they are relied upon. . . .
“Contrary to the appellants’ contentions, Say’s [the loan servicing representative’s] affidavit was sufficient proof of their default because the business records he relied upon satisfied the admissibility requirements of CPLR 4518 (a), and the records themselves actually evinced the facts underlying the appellants’ default” (citations omitted).
Decisions interpreting CPLR 4518 (a) are consistent to the extent that the three foundational requirements—that the record be made in the regular course of business; that it is in the regular course of business to make the record; and that the record must be made at or near the time the transaction occurred—if proved, make the records admissible since they are trustworthy and reliable. And clearly, if each of these criteria are established, the records of a predecessor-in-interest lender or servicer can be introduced as evidence in support of a foreclosing plaintiff’s prima facie case since those business entries accurately recorded underlie the intent of the business records exception (People v Cratsley, 86 NY2d 81 [1995]; Citibank, NA v Abrams; Deutsche Bank Natl. Trust Co. v Monica; HSBC Bank USA, N.A. v Sage; Landmark Capital Invs. Inc. v Li-Shan Wang). Moreover, the language in the statute grants the court discretion to make this determination of admissibility by including in the statute the words “if the judge finds” as the precursor to confirm the requisite showing of the three foundational elements which support a finding of admissibility.
In this case, the mortgage servicer’s representative’s affidavit states that she was familiar with the mortgage servicer’s regular business practice; that it was the regular course of Shellpoint’s business to maintain the records she refers to throughout her affidavit; and that the records were made at or near the time of the transaction. As to the records maintained *908 by the predecessor servicer, the affidavit states that those records were integrated into Shellpoint’s records and were relied upon as a regular Shellpoint business practice and in the ordinary course of Shellpoint’s business. The factual contentions confirm the defendant’s default in making timely payments due the mortgage lender since November 2012 and confirm the plaintiff’s retention of the duly indorsed promissory note prior to commencement of this action. Based upon these representations set forth in the servicer’s affidavit and the records themselves, the court finds that the plaintiff has made the requisite showing of the three criteria set forth pursuant to CPLR 4518 (a) to establish the admissibility of the records sought to be introduced into evidence and therefore plaintiff has established its prima facie showing of entitlement to summary judgment as to the defenses raised by the defendants concerning plaintiff’s standing and the defendant’s default and breach of the underlying mortgage agreement (People v Kennedy, People v Cratsley; Williams v Alexander; Deutsche Bank Natl. Trust Co. v Monica; State of New York v 158th Street & Riverside Dr. Hous. Co., Inc.; People v DiSalvo; Matter of Carothers v GEICO Indem. Co.; Landmark Capital Invs., Inc. v Li-Shan Wang).
Second, with respect to the issues of proof of service of the 90-day notice and the mortgage default notice, defendants’ opposition again centers upon the business records exception to the hearsay rule as it relates to the proof submitted by the plaintiff to establish its compliance with RPAPL 1304 and the mortgage service requirements. Plaintiff’s mortgage service representative’s affidavit states that the prior servicer (Resurgent) served the mortgage default notice upon the mortgagor on November 25, 2013. Plaintiff’s mortgage service representative’s affidavit states that based upon “personal knowledge” service of the RPAPL 1304 90-day notice was made by the current mortgage servicer (Shellpoint) in compliance with the statute on March 21, 2014. Plaintiff has also produced copies of the default notices together with the USPS tracking statements of the 90-day notice mailings confirming delivery and the RPAPL 1306 filing statement confirming filing.
RPAPL 1304, enacted in 2008, requires that mortgage lenders or loan servicers “shall give notice” to delinquent borrowers, at least 90 days before commencing legal action to foreclose and requires certain language be included in the notice providing a list of government approved housing counseling *909 agencies to encourage resolution. The statute provides that if the matter is not resolved within 90 days from the date the notice is mailed the lender is authorized to commence legal action. More significantly RPAPL 1304 (2) sets forth the notice service requirements as follows:
“Such notice shall be sent by such lender, assignee (including purchasing investor) or mortgage loan servicer to the borrower, by registered or certified mail and also by first-class mail to the last known address of the borrower, and to the residence that is the subject of the mortgage. . . . Notice is considered given as of the date it is mailed. The notice shall contain a current list of at least five housing counseling agencies serving the county where the property is located from the most recent listing available from department of financial services. The list shall include the counseling agencies’ last known addresses and telephone numbers. The department of financial services shall make available on its websites a listing, by county, of such agencies. The lender, assignee or mortgage loan servicer shall use such lists to meet the requirements of this section.”
The 2008 statute (RPAPL 1304) was the product of a state interagency task force’s recommendations to address the problem of mortgage foreclosures and abusive lending practices. New York State Senate Bill S8143-A amended the Real Property Actions and Proceedings Law, the CPLR, the Banking Law, the General Obligations Law, the Penal Law, the Criminal Procedure Law and the Real Property Law. State Senator Hugh T. Farley’s July 31, 2008 sponsorship letter memorandum in support of the legislation’s passage stated that the bill consisted of three main aspects: (1) to promote efforts to encourage lenders and borrowers to reach a resolution to avoid foreclosure; (2) to combat fraudulent lending practices; and (3) to create new standards and protections for consumers related to subprime loans. (Bill Jacket, L 2008, ch 472 at 5-6.) The first aspect related to enactment of RPAPL 1304 and was directly tied to a new section of the CPLR, rule 3408, requiring a court “to schedule a settlement conference within 60 days of when the proof of service of the complaint is filed with the county clerk’s office.” (Senate Introducer Mem in Support, Bill Jacket, L 2008, ch 472 at 7.)
A review of Senator Farley’s sponsorship commentary and the bill jacket makes clear the primary legislative intent as it *910 relates to the introduction of these statutes (RPAPL 1304 and CPLR 3408) was to provide a preliminary mechanism for homeowners, who have defaulted in making payments due under the terms of their mortgage agreements, to become more aware that legal action was about to be initiated against them by the mortgage lender should payments not be forthcoming, and to introduce a compulsory court settlement conference program whereby the defaulting parties could meet with representatives of the mortgage lender and court personnel in an effort to resolve the borrowers’ breach and to avoid foreclosure. The bill jacket contains 16 letters from various agencies and groups commenting, mostly in favor, on the proposed legislation. Those letters clearly reflect the legislation’s aim which was to encourage borrowers to participate in workout discussions with the goal of reducing the numbers of mortgagors losing their homes. The June 26, 2008 New York State Bar Association’s memorandum in support specifically quotes then Chief Administrative Judge Ann Pfau’s position that “there is no question that an early conference that brings both parties to court, identifies the issues, and coordinates access to the growing array of services and resources being made available to homeowners would significantly assist the courts in disposing of these cases more expeditiously and effectively.” (Mem in Support, Bill Jacket, L 2008, ch 472 at 23.) The New York Public Interest Research Group’s letter in support amplified the legislative intent by reinforcing the idea that “when a homeowner does end up in a foreclosure proceeding, they will have an opportunity to get counseling and legal services assistance to reform their loan and a mandatory conference will be scheduled to determine if a workout can be arranged.” (Bill Jacket, L 2008, ch 472 at 45.)[1]
Given due regard to the aforementioned statute’s legislative intent, of importance in this case is the issue of notice, and the question of what proof is required to show that service of the 90-day notice was made in compliance with the statute (RPAPL 1304 [2]). This section clearly provides that notice shall be sent by the lender or servicer to the borrower(s) by either registered or certified mail and by first-class mail to the borrower(s)’ “last known address . . . and to the residence [which] is the subject *911 of the mortgage.” Notice is considered given as of the date it is mailed. Since 2011, courts have interpreted the statute to require proper notice of the RPAPL 90-day notice as a “condition precedent” to commencement of a foreclosure action with the mortgage lender having the burden of establishing compliance with the notice requirements (see Aurora Loan Servs., LLC v Weisblum, 85 AD3d 95 [2d Dept 2011]; see also First Natl. Bank of Chicago v Silver, 73 AD3d 162 [2d Dept 2010]; TD Bank, N.A. v Leroy, 121 AD3d 1256 [3d Dept 2014]).
The degree and quantum of proof required of the mortgage lender to satisfy the 90-day notice requirements has become an expanding topic of foreclosure motion practice. Recent appellate court decisions finding that the mortgage lender has failed to submit sufficient proof of compliance with RPAPL 1304 (2) service requirements have delineated various reasons for those findings. Among the reasons include: (1) the affidavit submitted by the lender’s or servicer’s representative provides evidence that is “unsubstantiated” and or “conclusory” (see Cenlar, FSB v Weisz, 136 AD3d 855 [2d Dept 2016]; JPMorgan Chase Bank, N.A. v Kutch, 142 AD3d 536 [2d Dept 2016]); (2) the plaintiff failed to submit an affidavit of service confirming the 90-day notice was mailed as required by statute (see Bank of N.Y. Mellon v Aquino, 131 AD3d 1186 [2d Dept 2015]; Deutsche Bank Natl. Trust Co. v Spanos, 102 AD3d 909 [2d Dept 2013]); (3) the plaintiff failed to submit proof of mailing by the post office (CitiMortgage, Inc. v Pappas, 147 AD3d 900 [2d Dept 2017]); or (4) the plaintiff failed to submit proof of compliance (Deutsche Bank Natl. Trust Co. v Cunningham, 142 AD3d 634 [2d Dept 2016]).
The Appellate Division, Second Department’s most recent decision on this subject is CitiMortgage, Inc. v Pappas. After reciting the statute’s “condition precedent” qualification, the Court states:
“By requiring the lender or mortgage loan servicer to send the RPAPL 1304 notice by registered or certified mail and also by first-class mail, the legislature implicitly provided the means for the plaintiff to demonstrate its compliance with the statute, i.e., by submission of the proof of mailing by the post office.” (CitiMortgage, Inc. v Pappas at 901 [emphasis added].)
The Court goes on to state:
“Here, the plaintiff failed to submit an affidavit of *912 service or proof of mailing by the post office, evincing that it properly served the defendant pursuant to RPAPL 1304. Contrary to the plaintiffs contention, Gantner’s affidavit and attached business records were not sufficient to establish that the notices were sent to the defendant in the manner required by RPAPL 1304. While mailing may be proved by documents meeting the requirements of the business records exception to the rule against hearsay under CPLR 4518, here, Gantner did not aver that he was familiar with the plaintiffs mailing practices and procedures, and therefore did not establish proof of a standard office practice and procedure designed to ensure that items are properly addressed and mailed. Therefore, Gantner’s unsubstantiated and conclusory statements were insufficient to establish that the 90-day notice required by RPAPL 1304 was mailed to the defendant by first-class and certified mail” {id. at 901-902 [citations omitted]).
This decision has effectively amended the statute to require that proof of service compliance can only be made (with one exception) by submission of an affidavit of service by the individual serving the required notices on the borrowers or proof of mailing by the post office itself. Neither condition is legislatively mandated nor ever contemplated in the written history of this bill.[2]
*913 The Pappas decision did recognize that, in the absence of evidence to show proof of mailing or an affidavit of service, the plaintiff retained the right to prove compliance by “documents meeting the requirements of the business records exception to the rule against hearsay under CPLR 4518.” (Pappas at 901.) In this regard the plaintiff has submitted an affidavit from the current mortgage servicer in which the Shellpoint foreclosure litigation specialist states that based upon personal knowledge the 90-day notices were mailed to the defendant at the mortgaged premises on March 21, 2014. Plaintiff includes copies of the notices together with USPS tracking statement confirming delivery of the notices on March 28, 2014 and the RPAPL 1306 filing statement confirming the mailed notices were filed within three business days with the New York State Department of Financial Services. As this court previously determined in finding that the defendant has defaulted under the terms of the mortgage agreement by failing to make payments since November 1, 2012 and determining that the lender has standing, the plaintiffs mortgage service representative’s affidavit satisfies the business records exception to the hearsay rule (CPLR 4518; Landmark Capital Invs., Inc. v Li-Shan Wang; Citibank, NA v Abrams). Due proof of mailing of the RPAPL 1304 notices was established through business records which detail standard office practice designed to ensure proper mailing (Nassau Ins. Co. v Murray, 46 NY2d 828 [1978]; Flagstar Bank, FSB v Mendoza, 139 AD3d 898 [2d Dept 2016]; Viviane Etienne Med. Care, P.C. v Country-Wide Ins. Co., 114 AD3d 33 [2d Dept 2013], affd 25 NY3d 498 [2015]). Moreover, plaintiff’s mortgage service representative’s affidavit establishes personal knowledge based upon the lender’s business practices and procedures and “the records themselves actually evince the facts for which they are relied upon” (Citigroup v Kopelowitz at 1015 [citations omitted]). Under these circumstances a presumption of receipt arises (Flagstar Bank, FSB v Mendoza) and, in view of the defendant’s failure to submit an *914 affidavit based upon personal knowledge rebutting receipt (Grogg v South Rd. Assoc., L.P., 74 AD3d 1021 [2d Dept 2010]), plaintiff has demonstrated strict compliance with RPAPL 1304 notice requirements (Flagstar Bank, FSB v Mendoza).
With respect to the issue of the proof of service of the 30-day mortgage default notice required by paragraphs 15 and 22 of the mortgage agreement, the plaintiff has submitted sufficient evidence of compliance with these mortgage provisions through the affidavit of the current mortgage service representative establishing that the demand for payment was mailed to the defendant by first-class mail to Davis’s last known address on November 25, 2013. Such evidence qualifies as admissible as an exception to the hearsay rule (CPLR 4518) based upon the integration of the prior servicer’s business records into the current servicer’s records and Shellpoint’s reliance upon those records in the regular course of their business. The affidavit, together with submission of a copy of the notice itself, satisfies the default notice requirements set forth in the mortgage agreement (see Hudson City Sav. Bank v Friedman, 146 AD3d 757 [2d Dept 2017]) and defendants’ submission of an attorney’s affirmation denying such service fails to provide any relevant, admissible evidence sufficient to defeat plaintiff’s claim of service (Emigrant Mtge. Co., Inc. v Gosdin, 119 AD3d 639 [2d Dept 2014]).
Finally, any remaining defenses asserted in defense counsel’s 73 page, 237 paragraph affirmation in support of the cross motion and in opposition to plaintiff’s motion which was not previously addressed in this decision are wholly without merit and dismissed. Accordingly, the defendants’ cross motion is denied and the plaintiff’s motion is granted in its entirety. The proposed order of reference submitted by the plaintiff has been signed simultaneously with the execution of this order.

. The statute has been amended three times since 2008. In January-2010 its applicability was enlarged to include all “home loans” and not just those which had been defined as “high cost,” “subprime” and “non-traditional.” In December 2016 additional amendments were made including requiring that notice be sent by an “assignee” of the original mortgage lender and that notice be sent in a separate envelope.

. Nowhere in the statute is there a service requirement imposed upon the mortgage lender or servicer to prove compliance by either an “affidavit of service” or “proof of mailing by the post office.” Nor was there ever any indication or proposal by the bill’s sponsor, or commentary submitted in support of the legislation, that the service provision be expanded to include such strict service requirements. A fair reading of the legislative history makes clear that its intent was to facilitate and foster negotiations between the lender and borrower at an early stage of default with the idea as described by former Chief Administrative Judge Pfau to effectively dispose of cases in an expeditious manner. Quite contrary to that intent, by imposing these additional “implicit” requirements, the effect has been and will continue to be an avalanche of motion practice by defendant’s counsel designed to forestall, delay and deny mortgage lenders the ability to foreclose without fair or expeditious resolution. It remains a basic rule of statutory construction that courts should avoid judicial legislation under the guise of interpreting a statute and cannot make, change or amend a statute. Statutes should never be interpreted so as to create unreasonable, mischievous or absurd results (McKinney’s Cons Laws of NY, Book 1, Statutes §§ 73, 76, 92, 95, 143, 145, 148). The effect of amending this statute in this manner has and will continue to create absurd results never contemplated by the legislature by rewarding *913 mortgagors who have avoided making monthly payments for 6, 7 or even 10 years, and who had the required CPLR 3408 conference, to continue to delay any just resolution for his/her breach of contract. The average homeowner who struggles to make his/her mortgage payments and takes on two or three jobs to do so, would be astounded to learn the unreasonable barriers imposed by current RPAPL 1304 requirements and its absurd results in delaying prosecution of foreclosure actions ad infinitum based upon a 90-day notice provision (where any rational homeowner would already be aware of the inevitable consequences of his/her default).